The next case on the afternoon docket is number 520-0160, Godair v. Metro East Sanitary District. Arguing for the appellant, Donna Godair, is Edward Unsel. Arguing for the appellee, Metro East Sanitary District, is Brian Funk. Each side will have up to 15 minutes for their argument. An appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. And please remember, only the clerk is permitted to record these proceedings today. Good afternoon, counsel. Good afternoon, your honor. So this is 5-20-0160. Mr. Funk, are you ready to proceed? I'm sorry, Mr. Unsel. I am, sir. Then go right ahead. I'm sorry. Okay. Counsel, court, may it please the court, Eddie Unsel on behalf of Donna Godair. This is an attempt by the plaintiff to overturn the summary judgment ruling by Honorable Sarah Smith. I would just, first of all, direct the court's attention to the order. The order itself, if you read it, it reads not like any summary judgment orders that I've been accustomed to in my 42 years of practice. It reads like basically a stipulated bench trial. And that is our concern. It would seem that the court throughout its order weighed facts and made determinations. And that simply was not what the court's function was. The case was argued. It sat for quite a long time. And maybe that was it. But I think our briefs, both my brief and co-counsel's, we recited the facts pretty well. Excuse me a second. I think we've lost Mr. Funk. Okay. Should I wait until you tell me it's okay? I think, Courtney, can we bring him back in? I'm bringing him back in now. Are you back, Mr. Funk? Yes, Your Honor. I apologize. Hopefully that doesn't happen again. That's all right. Go right ahead, Mr. Unsel. Okay. Don't you just love this Zoom? Okay. So I think that it's necessary that I recite just very briefly the facts, even though they weren't covered very well in Mr. Funk and mine's brief. Very quickly, Donna Goddard lives in Granite City. This is a drainage ditch that runs behind her, owned by Metro East. On this drainage ditch are two aprons, one on the east side, one on the west side. The ditch runs north and south. At each end of the ditch where it's broke up by the blocks, there's concrete aprons that are the end of a sidewalk and stops right at where this apron exists. There's no signs. And throughout this, I'm just going to say what is admitted. The defendant has admitted through a Supreme Court Rule 216 request to admit that this is a parkway. There's been a lot of litigation. You can see through that back and forth. But the bottom line is 216, an admission under 216 is non-aspirational. It's mandatory. Can we stop there for a minute? Yes, sir. I'm confused on definition. I always thought a parkway was between the curb and the sidewalk next to a street. Is there a street someplace here? That's an example of a parkway. If you take a look at the case, the Supreme Court case of Marshall that I've cited, that really goes in and explains it very well. And let me tell you the difference. The difference on a street, the municipality, the state, whatever, the government entity has a duty to maintain it in an ordinary negligence type fashion. And when it's a parkway, it's a little bit relaxed. What you have to show is that if it is a parkway, the people that are on it, they are permitted and intended users. And then the duty from the municipality is that they don't allow any pitfalls, snares, traps. And this is just language from a number of Supreme Court. And our position, our position is that the defenders admitted that it's a parkway. Okay. They've admitted through depositions, and this is all in the brief, that they didn't maintain it. They admitted that the land was used by the public. They admitted knowledge of prior slides that occurred in this ditch. They admitted that the sidewalk from both sides, going north and south, stops. There's no signs. There's no warnings. There's nothing to indicate that no one should be on it. There was testimony. It's misstated, I believe, in counsel's brief. He says that there were some warnings and people were asked to leave. That's not true. The testimony in the depositions was, and this was self-serving testimony, that when they'd see kids down in the ditch, they'd tell them to leave. There was — Mr. Jones, I want to stop you real quick. Yeah, sure. Jack, check on the time. I don't know if we're losing Mr. Funk. He's there. Well, my image is frozen. I just want to make sure Mr. Funk's with us and is able to hear counsel and properly respond. I don't believe he is here, Justice Booey. Okay. You may need to call in. I've sent him a message to call in, so that way we can actually — Yeah, it seems like his image was freezing up. Yes. And he's having difficulty. Yeah, I was letting him in back and forth, so. We should, hopefully, if he gets the number, it should call in in just a second on there, and I'll be able to let him in that way. That should override his internet. Maybe he wants to waive argument and just confess. I do need to pause. Okay. Go right ahead. Okay. Well, I was at the point where there were sidewalks that actually stop and abut right up to this apron. And I just want to make it clear that this case is not about the ditch. It's about the area, the apron, if you will. And I would just point out that on the opposite side of this ditch, on the other apron, is a paved bike trail, a walking path, the same as here. The only signs that appear that direct us on the part where my client got injured is that there is a sign that says no vehicles. That's it. That's the only sign. During all the depositions, it was admitted that there was never anybody charged with trespass. It was admitted that they knew people did walk on that. And it was admitted that a number of utility people were allowed to use that and to walk up and down and proceed north and south on this. And I think just the fact that this was an admitted parkway, that's what sets this apart. Now, in counsel's brief, I just want to say that very briefly, he argues something about waiver, that we waive this argument. I really didn't understand what he was saying. I would point that on page nine of my brief, I went on and cite the Marshall case, and I go on and explained the obligations that the community would have with respect to a parkway. And again, the parkway designation comes from counsel's noncompliance or refusal to answer the request to admit which listed. We litigate this. Judge Mudge's orders are in the file, and clearly it states that this is a parkway. So that's what you're dealing with. Judge Smith, at the end of her order that I believe that counsel says that we waived, well, it simply doesn't address it. She cites the DeBianco, I believe, is the name of the case. It has to do with a road, with someone crossing a road. That is not the issue here. And the issue before you is, are there any factual disputes? Well, yes, of course there is. And what I thought, really, this is a complex case. It's really not. It's very, very simple. You have a lady walking, and basically in her backyard, as everybody else is doing it, she has a grandson with her. And the grandson makes a move toward the dangerous part, which is the ditch. And again, this isn't about the ditch. And she moves, likewise, to intercept her grandson, and in her deposition, which wasn't disputed, that she comes near the edge. But she still, I believe her deposition was six to ten inches away from the edge. And it just immediately, it gives way. Much like the slides that I previously mentioned that they were aware of. Well, of course, when it slides, she steps over and suffers a horrible injury. The 911 call that she makes on this will make your blood curl. And that's it. I mean, that is simply the facts. Now, the defendants, they try to muddy the water, and they say, well, she didn't have permission, and she's a trespasser, and she's this, she's that. That's just, that's not at this time they can argue that. That was early in the litigation. They admitted that it was a parkway. So you have to take a look at the Marshall case and the other cases around. Now, Judge Smith, did she, at the very end, she says that, well, even if it's this, even if it's that, I'm looking at this DiBianco case, and I don't think that you fulfilled the duty aspect of it. That doesn't apply here. That's why it wasn't addressed. It was addressed. It's addressed throughout the brief, but that really, that doesn't apply. She goes on and say that, well, it would be too expensive. None of that was in the record. She weighed these facts, and that is not what a summary judgment is. And more to the point that the chief person at the time that was the head of the district was a guy by the name of Walter Greathouse. We were, he was asked, could signs have been put up? Could warnings have been put up? And the defendant's witness, the defendant's witness says, well, yes. And his exact terminology was a monkey could do it. It would be that simple. And he was asked, was it done? He said, no, the only signs that were put up, they didn't want anybody driving on it. So clearly it's a parkway by the evidence and by the facts that were adduced. But more importantly, it's a parkway by their admission. Therefore, if it is a parkway, the duty is that it is intended, the aspect of it, it's intended for walkers because no vehicles are allowed. And the walkers are intended and there are permitted users. And basically, if you take a look at the Marshall and the Gaston case that I cited, their duty is to render it safe and to prevent things like pitfalls and snares and traps. And because she was a walker, because she was intended by their own admission and because she was permitted. And the cases say that if you're intended, you're permitted. They breached their duty of care because of the giving away of this ground so close to the end. It wasn't like she stepped over the end. And, of course, we would argue that that's a pitfall. Could be a trap. I don't think that it could be a snare. But, I mean, this is the language that the Supreme Court used. And this falls squarely within it. In fact, we didn't argue that the judgment should have granted our partial motion for summary judgment. But be that as it may, again, if you review her order, she just weighed so many facts. And it honestly looks like a lot of stipulated bench trials that I've been involved with in my 40 years. I'm sorry, I've run out of words. I'm going to turn this over to my counsel. Yes, sir. Bicycle paths on the other side, right? Yes, sir. Then there was between the bicycle path, there was a little bit of grass and then there was a ditch. Is that right? Between the bicycle path and my end, yes. The bicycle path is on the opposite adjacent apron. Okay. And then you've got a ditch. We've got a pretty deep, steep ditch, about a 90 degree incline. Yes, sir. But then you've got grass or whatever it is, or weeds or some kind of stuff. There's no sidewalk in there any place, is there? The sidewalks would be perpendicular to this parkway. If you walk north or south on this parkway, then when it breaks, you're going to come to a sidewalk, an apron, an actually concrete apron. So if you're coming from that concrete apron, there is no sign, no indication that you're going into an unpermitted area or anything. There's just this grass walkway.  Okay. Thank you, sir. Anything else, Mr. Unsell? No, sir. I would turn it over to council and allow some time for rebuttal, please. Thank you. Obviously, you'll have that time. Mr. Funk, are you ready to proceed? Yes, your honor. Please go right ahead. May it please the court, council, once again, I apologize for the technical difficulties. I do want to get into some of the things that Mr. Unsell referenced, but first I'd like to point out that I think at the outset it's important to describe just what my client is. It is a sanitary district, a non-home rule entity that has only those powers provided to it by statute. And if you look at the statute here, it is all about drainage. The district doesn't have, own, or maintain streets, sidewalks, walkways, parkways, recreational property, anything like that. The district does not do it. It maintains drainage infrastructure that drains water from Granite City into Horseshoe Lake and eventually into the Mississippi River. So plaintiff's counsel is talking about all these sidewalks and aprons. None of that is the district's. The district doesn't own any of that. The bike path on the other side that's nowhere near where this accident occurred is owned by Madison County Transit through and is operated via an easement on the district's property. That is the only thing on the district's property that is, you know, could be considered a walkway of any kind, and that's not even the district's. So plaintiff's counsel stated that he didn't quite understand our argument with regard to the forfeiting argument, so I'll just touch on that really briefly. The circuit court ruled in the district's favor for numerous reasons, one of which was that Judge Smith said there was no duty because the case did not meet the traditional duty factors. And specifically, the court referred to the magnitude of the burden and the consequences of placing that burden on the district. The plaintiff did not respond to that issue, and that is a dispositive issue. You have to meet the traditional duty factors. If you don't, there is no duty. So to date, plaintiff has not responded to that issue at all. Issues that are not argued are forfeited, and since it's a dispositive issue, the case is essentially over. The same thing goes with breach. The circuit court, Judge Smith, stated that for the reasons set forth in her order, that there was no breach of a duty even if one existed. And the plaintiff raised or kind of touched on that in their reply or in her reply, but as Rule 341 says, once you fail to raise it in your initial brief, you can't address it in your reply. So that is the reason why there is a forfeiting of arguments and issues here. But whether that's the case or not, this case and plaintiff's claim fails basically at every level. First, there is no duty here. And the plaintiff has referenced these requests to admit, and I'm a little concerned that the plaintiff has not acknowledged in their briefs or in her briefs or here today the court's actual order with regard to the request to admit and the issue of whether something is a parkway. Specifically, Judge Mudge stated that none of the requests to admit asked the district to admit that there is a parkway. And what he was getting at is if you look at the request to admit, the plaintiff tried a little bait and switch. They said there is a path over on the west side of your property, and then they put in parentheses a different term, the word parkway. And Judge Mudge said they have admitted there is a path. They haven't admitted there is a parkway. You can't take a word and then put something else in parentheses and claim that they have admitted to it. So plaintiff has not referenced. In fact, plaintiff even says that Judge Smith failed to or actually reversed Judge Mudge's order. That's not correct. Judge Mudge said district never admitted there is a parkway. So I don't know why plaintiff continues to argue that because that issue is moot and was resolved by the trial court, specifically Judge Mudge. And the plaintiff has not raised any issue as to his ruling in the briefs. It just skips that ruling and says the district admitted it was a parkway. So the district did not admit there was a parkway. And to Justice Welch's point, there is no sidewalk there, and absolutely parkways are adjacent to sidewalks. They're in the public right-of-way. They're adjacent to streets. That's the area that's been referenced in Marshall and every case since then. This random property next to at the very edge of a ditch is in no way shape or form a parkway. And if you look at the facts here, there's no street, no public right-of-way, no streets, no mailboxes, no garbage pickup, no parking, no bus pickup, all of the characteristics that make it a parkway. It is absolutely not a parkway. Plaintiff is essentially trying to create an alternate reality here where they can get past summary judgment. But this is not a parkway. It never was, and the district never admitted that it was as set forth in Judge Mudge's order. And the other point is basically what plaintiff is saying is that we, the district, that is, admitted there's a duty. Well, it's black-letter law that you can't admit a duty through request to admit whether or not you answer those requests to admit.  But as I stated before, the case fails at every turn. There's no duty here. Plaintiff was a trespasser. There's no doubt about that. She admitted she did not have authority to be on the property. She knew she was entering the district's property. And the only way that she could avoid trespass being labeled a trespasser is if the frequent trespasser exception applied, which it does not. There is no evidence in this record that people constantly and persistently walked in the area where she fell, which counsel said was 6 to 10 inches away from the ditch. Plaintiff never testified as to the distance. She marked it right at the edge on a picture, right at the edge of the ditch. So she is a trespasser. And the issues raised by Judge Smith on that point are not the law. She said she's not a trespasser, that is, the plaintiff's not a trespasser because the district failed to post signs saying she couldn't be there. But the restatement in the case law is clear. You don't have to post signs in order for somebody to be deemed a trespasser. So plaintiff was a trespasser, and for that reason alone, she was not owed a duty. She also was not an intended user of the property pursuant to Section 3-102A of the Tort Immunity Act. The plaintiff is referring to these aprons and sidewalks and the bike trail. None of this is relevant. You won't hear plaintiff, and you haven't heard plaintiff's counsel today, and you didn't hear them in their brief or see it in the brief, where they discuss the actual property where the accident occurred. They keep talking about these aprons, the sidewalks, and the bike trail, and none of this is owned by the district. None of it is operated by the district. None of it is maintained by the district. And none of it is anywhere near where this accident occurred. And plaintiff is making conclusions that aren't in the record, that somehow this apron curb cut on the sidewalk is for pedestrians to enter the district's property. Well, A, that's not true. If you look in Granite City and you look on the maps and the overheads that were provided by plaintiff, you'll see those curb cuts everywhere. What they are is it's well established in the record that the district runs heavy tracked machinery and tractors in that area. Granite City simply put curb cuts so that their sidewalks or curbs did not get smashed. That's all it is. It has nothing to do with pedestrians, and nobody in this case has ever testified to that. This is a conclusion and an assumption made by plaintiff not based on the evidence. So plaintiff is not an intended user. And specifically, we've got to look at where she fell. She fell at the edge of a 20-foot basically cliff. This is not a small ditch. This is a massive almost canal-like infrastructure. And plaintiff fell on the edge of that. It's ridiculous to think that a sanitary district intends for pedestrians to use the edge of drainage ditches to walk on. And if you look at where she actually fell, the plaintiffs are calling one area a path. Well, if you see where she fell, she didn't fall on the path. She fell on uneven ground right next to the ditch with a thicket of tall weeds and grass, a place that no one in their right mind would walk. And everybody in this case has testified that that's a dangerous area that you should not be in. Even the plaintiff herself said, absolutely not. I don't go over there. I stay over here by my property. The only reason I went over there was because I allowed the child to get loose and I had to go retrieve him. And that is the only reason I went over there. Nobody in this case has said that the district intended for people to use the edge of a 20-foot cliff as a walkway. It's absurd. It defies common sense. And there's no basis for it in the record whatsoever. So she was not an intended user. She was not a permitted user. And for that reason also, she would not be, there would be no duty. And then we get into the traditional duty factors, which Judge Smith pointed to factor three and four, which the plaintiff did not respond to, so I won't waste time going into it. And another point that I mentioned before that the plaintiff had not addressed was the actual breach of a duty did exist. What the plaintiff testified to here was that there was soft ground that compressed under her foot, but there was no hole. That's what she testified to in her deposition. The plaintiff attempted to change that testimony by filing an affidavit with their summary judgment saying that there was a slide that occurred. Now, there was no evidence of that. The plaintiff didn't testify to that. None of the representatives of the district testified to that. And there was no record of any slide, whether physical or otherwise. There was no slide. What happened, according to plaintiff, when she testified in her deposition and her oath was that the ground just compressed a little bit and she fell forward. She told the EMTs that she slipped and fell. There was nothing mentioned ever about a slide, and there is no evidence of that. That is basically another fiction. Now, the reason why the slide came up was that the district had alleged that it didn't have any notice in one of its affirmative defenses. In its discovery, it provided documents and testified to its maintenance of the Namioki ditch. And one of those maintenance was about a mile-plus away where sometime before this accident there was a slide and that it was repaired. So the plaintiff sought to get around the notice issue by now claiming that a slide happened, even though there's no evidence of one. But even if we assumed that there was a slide moving on to the notice issue, you have to have notice of the specific condition that caused plaintiff to fall. A condition a mile away is irrelevant. You can't say that there's a sidewalk defect there and two blocks over the city or a municipality knows about any sidewalk defects. And similarly here, you can't say that there was a slide some years ago, and therefore the district has notice of any slide that occurs from here on out. Now, a plaintiff said, well, it's not a leap to believe that if they knew about one, they knew about the other. That is not the law. And I can't... This happened in mid-March, didn't it? Yes. I know it happened in March, and it did. Which is a time period where there's obviously moisture and thawing, and to have soft ground at the edge of a water-collecting ditch is not a breach of duty. Plaintiffs shouldn't have been there anyways, and we didn't have notice of a subjacent issue with the soil. But it's ridiculous to argue that the district should have known about this soft ground. And especially if you look at that area where she fell, which is different than the area that's mowed by the district, you'll see that it's a thicket of grass and weeds tall, which usually happens with ditches. You don't get the vehicles close to the ditch. And it's overgrown, and you can't see your feet, and it's not a place that you should be walking. So there is no breach, and even if there were a breach, the district would still be immune pursuant to 3-102A because it doesn't have notice, or didn't have notice. So you have no duty, you have no breach, and you have no notice and immunity under the Tort Immunity Act. The case fails, like I said, at every turn. Now, the point I pointed out, signs. The district doesn't have to close signs. Unsel, I hate to stop you, but you've run out of time. Okay. I appreciate it. Thank you, Your Honors. And I ask that the court affirm the ruling of the Circuit Court. Before I turn it over to Mr. Unsel, Justice, do you have any questions for Mr. Funk? No questions. Okay. Mr. Unsel, go right ahead with your rebuttal. You need to turn your mute off. Sorry. Thank you. Well, it seems like counsel just made my case for me. So he's admitted that there's tall grass. The tall grass hide the soft soil. So that's it. There's your trap, and there's your pit foil. What he didn't tell you is the statute in which this organization has formed this levy district. It calls in the statute for them to maintain their property. And their breach was admitted in the Irrigatory's response because they had knowledge that they did not maintain the property. And if you take a look at Mudge's order, I mean, the order, and that's not true. I didn't mention it. I attached it in the appendix. What Mudge says is, look, it's admitted. He said, his exact words were, look, the language is the language. The parkway is an ultimate fact. And Mudge says it's admitted as filed. So it is what it is. You can simply look at it. I attached it to the appendix. And based on that admission, you're dealing with a parkway. Now, counsel spent, I looked at it, two minutes and 14 seconds arguing about trespass. I don't know why he was arguing about that when he's claiming that the plaintiff waived all their arguments. Clearly, Judge Smith found, she specifically stated, I find she is not a trespasser. So if he didn't like that finding, he should have filed his own cross appeal, and then he would have been able to argue that. That is the finding that she was not a trespasser. Their executive director, and it was Walter Greathouse, he testified in his deposition that they did maintain the entry and the exit. And that's this whole issue is, yes, there's concrete aprons. There is nothing to say that you cannot go on to this parkway. And if the parkway language was meaningless, why did they spend so much time trying to strike it? It's there. They're stuck with it. 216 says it's an admitted, it is a parkway. And based on a parkway, then you have to look at Supreme Court Gates of Gaspin and Marshall to determine the proper analysis to put on this. The public right of way is the property. They admitted that it's used to move north and south. They admitted that, yes, utility workers go on it. Is there any statute? Is there any regulation that you have? Is there any rule that says only utility workers? No, no, no, no, no to all of that. They admitted in their depots that the purpose of the property was to traverse north and south. They admitted that they knew that people used it. And when they were asked, did you run anybody off? Well, we saw a couple of kids in the ditch and we asked them to leave. She's not a trespasser. And she got severely injured. It certainly is not a situation for a summary judgment, as I believe the court can clearly see that there are disputes here and there are facts. And these facts should be weighed and decided by the trier of fact and not in this what I believe to be a stipulated bench trial from Judge Smith. And I ask that you please reverse this and send this back, please. Thank you. Any questions, justices? No. Well, counsel, thank you. We will take this under advisement and we will issue a disposition of due course. Thank you. Thank you, sir. Thank you.